Callahan, J.
This is a proceeding to review a final determination of the Comptroller assessing a tax on gross receipts of the petitioner for the fiscal years 1941-1943, inclusive, under the so-called New York City Business Tax Laws (Local Laws, 1941, No. 47 of City of New York; Local Laws, 1942, No. 27 of *189 City of New York; Local Laws, 1943, No. 21 of City of New York). This tax is payable by persons carrying on any trade, business, profession or commercial activity in the city of New York.
The petitioner is a Sandy Hook pilot licensed by the United States and the State of New York. The receipts held to be taxable by the Comptroller represent pilotage fees for the petitioner’s services in navigating ships in and out of the port of New York. During the years in question the taxpayer’s gross income from this source aggregated $50,540.17 earned as follows: $461.42 from coastwise vessels bound to or from New York City piers; $765.99 from coastwise vessels elsewhere destined; $2,081.21 from naval vessels wherever bound; and $47,231.55 from vessels in foreign trade. The ships piloted by the petitioner were navigated to or from points on the high seas beyond the territorial limits of the United States.
The question presented is the constitutionality of the instant tax on earnings of the petitioner for his services in piloting ships engaged in foreign and interstate commerce.
While the petitioner contends that the tax as applied to him violates the Federal Constitution in several respects, it is enough that we find it in conflict with the “ commerce clause ” reserving to Congress the power “ To regulate Commerce with foreign Nations, and among the several States * * (U. S. Const., art. I, § 8, par. 3.)
In Joseph, v. Carter & Weekes Co. (330 U. S. 422) the Supreme Court invalidated taxes imposed under the very same local laws on the gross receipts of stevedores operating in New York harbor. This decision proceeded on the theory that the loading and unloading of a vessel was so essentially a part of commerce as to prohibit a tax on gross receipts derived from the business of stevedoring in connection with vessels engaged in foreign and interstate trade. It was considered that the loading and discharge of a vessel in such trade was not so distinct from commerce itself as to constitute a local incident on which an unapportioned gross receipts tax might be locally imposed. While the Supreme Court recognized a wide latitude for State and municipal taxation, it held that taxes of the kind under review amounted to a multiple burden on commerce beyond permissible constitutional limits.
It cannot be doubted that the piloting of vessels in foreign and interstate commerce is as much a part of commerce as the work of a stevedore. If anything, the pilot is more directly *190 connected with commerce in that he has charge over the navigation of a vessel during a portion of the voyage. (See Cooley v. Board of Wardens of Port of Philadelphia, 12 How. [U. S.] 299; Ex Parte McNiel, 13 Wall. [U. S.] 236.)
The city, however, contends that the taxes in dispute are lawful for the reason that Congress has granted the power of regulation over pilots and pilotage to the States. Thus, it is argued that the taxation of the petitioner’s pilotage fees does not conflict with the “ commerce clause ”, since piloting is a part of commerce not regulated by Congress. On this basis the case of Joseph v. Carter & Weekes Co. (supra) is said to be distinguishable from the instant proceeding.
Prior to the adoption of the Constitution, the several States exercised jurisdiction over pilots and pilotage within their borders. Under the “ commerce clause ” the control of commerce generally was surrendered to the Federal Government, but this did not deprive the States of power to regulate pilotage when authorized by Congress (Cooley v. Board of Wardens of Port of Philadelphia, supra). In 1789, Congress enacted the earliest Federal statute on the subject of pilotage (1 U. S. Stat. 54, § 4), continuing the powers of the States and ratifying their acts in the regulation of pilots within their jurisdiction. This enactment as presently in effect (U. S. Code, tit. 46, § 211) provides as follows: ‘ ‘ State regulation of pilots. Until further provision is made by Congress, all pilots in the bays, inlets, rivers, harbors, and ports of the United States shall continue to be regulated in conformity with the existing laws of the States respectively wherein such pilots may be, or with such laws as the States may respectively enact for the purpose.” It may be noted that Congress has provided an exception to this grant of State regulatory power over pilotage in the case of coastwise steam vessels (U. S. Code, tit. 46, § 215).
The State of New York has availed itself of the authority thus conferred to regulate New York State pilots within the Port of New York and set their fees (see Navigation Law, art. 6). The statute also provides that a sum not exceeding 3% of their earnings from pilotage fees may be collected from State licensed pilots to defray the cost of such regulation (Navigation Law, § 95, formerly § 90, subd. 11).
In Cooley v. Board of Wardens of Port of Philadelphia (supra) the Supreme Court upheld the constitutionality of a Pennsylvania statute regulating pilotage and imposing certain charges on vessels refusing to take pilots. It was pointed out *191 that the power of regulation over pilotage was in the nature of a police power to be exercised locally for the purpose of promoting safety of navigation in local waters. This was deemed a matter of State concern that did not imperatively demand any single uniform rule to be supplied by Congress.
It seems to us that a distinction must be drawn between the power granted to the States to regulate a phase of commerce and the power claimed by the City of New York to tax this phase of commerce for revenue purposes by means of an unapportioned gross receipts tax. The local laws, under which the present taxes were assessed against the petitioner, in no wise attempt to regulate pilots in the Port of New York, nor has any such right or power been conferred on the city by the State. The taxes in question have been imposed and collected by the municipal taxing authority as part of a general revenue scheme, and not as incidental to any exercise of police power in the field of pilotage. The matter of revenue taxation has no relation to the subject of regulation or police power. If the imposition of an unapportioned gross receipts tax on the business of stevedoring in New York harbor is repugnant to the “ commerce clause ”, it seems clear that a like tax on pilotage in the Port of New York is open to the same objection. It has less by the way of local incidence that is distinct from the commerce than stevedoring, and constitutes at least as great a danger of imposing a multiple burden on commerce.
In view of our conclusion that the taxes assessed under the local laws against the gross receipts from the petitioner’s pilotage fees conflict with the “ commerce clause ” of the Constitution, it becomes unnecessary to consider the other constitutional questions raised in this proceeding.
The determination appealed from should be annulled, with $50 costs and disbursements.
Peck, P. J., Glexxox, Vax Voorhis and Shiextag, JJ., concur.
Determination unanimously annulled, with $50 costs and disbursements to the petitioner.